DUPONT et al. v. CITY of PITTSBURGH et al.

(Circuit Court, W. D. Pennsylvania. July 6, 1895.)

No. 6.

1. MUNICIPAL CORPORATIONS—LIMIT OF INDEBTEDNESS—PENNSYLVANIA CONSTITUTION.
   *Held,* following the decision of the supreme court of Pennsylvania, that the language of article 9, § 8, of the constitution of that state, limiting the debt of cities to 7 per cent. of the assessed valuation of taxable property therein, means the valuation fixed by the city authorities for city taxation, not that made by county officers for county purposes.

2. SAME—SPECIAL ELECTIONS—PENNSYLVANIA ACTS OF JUNE 9, 1891, AND JUNE 10, 1893.
   *Held,* also following the decision of the supreme court of Pennsylvania, that the act of the legislature of that state of June 9, 1891, regulating the manner of increasing the indebtedness of municipalities, is not repealed by the act of June 10, 1893, known as the "Baker Ballot Law."

3. EQUITY PLEADING—IMPEACHING SPECIAL ELECTION.
   Allegations, in a bill seeking to impeach the result of a special election to authorize a municipal indebtedness, that, in many districts tickets in opposition were not furnished, or, if furnished, were secreted or destroyed, and discrimination made between different loans proposed, by not furnishing tickets against loans to which there was opposition, are too indefinite to be a foundation for any relief, though ordinances relating to the election required the mayor to furnish ballots.

4. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—PENNSYLVANIA STATUTE.
   It is within the lawful power of a city, under the Pennsylvania statute of May 16, 1891, relating to the opening and improvement of streets, to provide funds to meet an estimated liability for the costs, expenses, and damages of opening a street; and it is not to be presumed that more of the fund raised will be used in making such improvements than will be lawfully applicable thereto.

Wm. B. Rodgers and J. M. Shields, for plaintiffs.
Watson & McCleave and W. C. Moreland, for defendants.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. The main object of this bill is to restrain the city of Pittsburgh and its mayor and controller from executing and issuing any bonds of the city under—First, certain ordinances, enacted on January 14, 1895, providing for the submission to the electors of the city of questions of increasing the indebtedness of the city for designated purposes; second, an election in pursuance of those ordinances, held on February 19, 1895; and, third, an ordinance enacted on April 23, 1895, authorizing an issue of bonds to the amount in all of $4,750,000, agreeably to the vote of the electors. The bill contests the legality of the proposed increase of the debt of the city upon the grounds—First, that the election relative to that increase was not held in conformity with, but in violation of, the laws of the state of Pennsylvania; and, second, that such increase will contravene the constitutional provision limiting the indebtedness of cities. With respect to the election of February 19, 1895, the complainants maintain that it should have been held under and in accordance with the provisions of the act of June 10, 1893, popularly known as the "Baker Ballot Law"; and that, as confessedly it

was not so held, but was conducted under and in accordance with the provisions of the act of June 9, 1891, the election was illegal and void. The supposed unconstitutionality of the proposed increase of the debt of the city is based upon the assumption that the constitutional limit of the debt of the city of Pittsburgh is to be ascertained by the assessed value of the taxable property therein as fixed for county purposes by the ward assessors and the commissioners of the county of Allegheny.

The questions thus raised are important, and might be difficult of solution in the absence of authoritative decisions. But such decisions we have. In Bruce v. Pittsburg, and Succop v. Pittsburg, 166 Pa. St. 152, 30 Atl. 831, 835, the supreme court of Pennsylvania ruled that the language in article 9, § 8, of the constitution, "The debt of any city shall never exceed seven per centum upon the assessed value of the taxable property therein;" and that of section 2 of the act of April 20, 1874, "Any city may incur debt or increase its indebtedness to an amount in the aggregate not exceeding two per centum upon the assessed value of the taxable property therein, as fixed and determined by the last preceding assessed valuation thereof;" and similar language throughout this act,—means the valuation fixed by the city authorities as a basis of taxation for city purposes, and not the valuation made by county officers for county purposes. Furthermore, in one of those cases, the question of the constitutionality of the act of May 5, 1876, entitled "An act providing for the classification of real estate for the purpose of taxation, and for the appointment of assessors in cities of the second class," having been raised, the court sustained the act as a rightful exercise of legislative power. Then, again, in the still later case of Evans v. Township of Williston (pending when this bill was filed, but since decided),[1] the supreme court of Pennsylvania held that the act of June 10, 1893, did not repeal the act of June 9, 1891, regulating the manner of increasing the indebtedness of municipalities, and that so much of the act of 1893 as relates to elections other than those for public officers was unconstitutional; and the court sustained a township election held February 20, 1894, for the increase of the debt of the township, conducted according to the provisions of the act of 1891.

Now, upon the construction of the constitution and laws of a state, the courts of the United States, as a general rule, follow the decisions of the highest court of the state, unless they conflict with or impair the efficacy of some provision of the constitution or of a law of the United States, or a rule of general commercial law. Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554; Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227. In the present instance no good reason appears for departing from the general rule. The questions here involved altogether arise under the constitution and laws of the state of Pennsylvania, and concern the powers conferred by the state upon one of her own municipalities; and, therefore, we think that the decisions of the supreme court of the state upon those questions are conclusive upon us.

[1] 32 Atl. 87.

As respects the main branch of this case, we are not able to see that the opinions delivered by the supreme court of Pennsylvania leave open any material question. Although, in discussing the act of May 5, 1876, the court made mention only of the supposed defect in the title of the act, the decision implied that, in the judgment of the court, the subject-matter of the act was proper for class legislation, and that the act was free from any valid objection upon constitutional grounds. In the Williston Township Case, particular notice was not taken of the provision in the act of 1891: "Such election shall be held * * * under the same regulations as provided by law for the holding of municipal elections." Clearly, however, these words are to be understood as meaning that such regulations are to govern in so far as they are not inconsistent with the specific regulations prescribed in the act of 1891; and this construction is implied in the decision of the supreme court sustaining the township election.

Little need be said with reference to the averment in the bill:

"In many election districts, tickets in opposition to the increase of debt were not furnished, or, if furnished, were secreted or destroyed, and discrimination made between different loans that were proposed by the city, by the nonfurnishing of tickets in relation to increase of debt, against which it was considered there would be great opposition. That by this violation of law and unfair and unjust action a full and free expression of the public will was prevented, and a majority returned for said increase of debt."

If an election for the increase of municipal indebtedness is impeachable by a bill in equity upon any such ground as is here suggested, still there are several sufficient answers to the above averment. In the first place, there was no statute requiring the public authorities to furnish tickets to the electors at such an election, and under the act of 1891 every elector had the right to use either a written or printed ticket. Then, again, although it is true that the several ordinances relating to this election directed the mayor of the city to provide the necessary ballots, yet the bill does not charge that he failed in his duty in that regard. The alternative averment "that, in many election districts, tickets in opposition to the increase of debt were not furnished, or, if furnished, were secreted or destroyed," is quite insufficient to impeach the action of the mayor or other city authorities. By whom tickets "were secreted or destroyed" is not disclosed. The allegations of this paragraph are entirely too indefinite to affect the validity of the election.

The tenth and eleventh paragraphs of the bill relate to part only of the proposed increase of the city's indebtedness, namely, the issue of bonds to the amount of $500,000 for the purpose of acquiring the ground for and paying the damages and expenses of opening and improving Beechwood avenue and Grant Way, two boulevards or main highways. This branch of the case will be best understood by quoting those paragraphs: .

"Tenth. Your orators further aver that said proposed increase of indebtedness, in so far as it relates to the payment for acquisition of land, and the damages and expenses of construction of highways, is illegal and unjust, in this: Under the laws governing said city now and for many years past in force, the costs and expenses of the opening and improvement of streets has been and is provided for by assessments upon the property benefited, but it

is now proposed to open and improve this and another avenue at the public expense, thus making a discrimination between these and other highways, and imposing unjust and illegal burdens on the taxpayers of said city.

"Eleventh. And your orators further aver and charge that the said ordinance for the opening of said Beechwood avenue is illegal and void, in that, by the said ordinance, it is proposed to proceed under the general acts relating to the opening of streets, and the said acts do not authorize the payment by the said city of the costs, expenses, and damages of said opening under the circumstances and in the manner proposed by the said city, as shown by the ordinance hereto attached."

The prayers under this head are that the city be enjoined from improving Beechwood avenue "out of the general funds of said city, or out of funds raised from the sale of said bonds," and "that the ordinance for the opening of Beechwood avenue be declared illegal and void."

The reference made in the bill to the law relative to the opening and improvement of streets in the city of Pittsburgh, and the provisions of the ordinances attached to the bill, make it proper and necessary for us, in passing upon the demurrer, to look into that law to determine whether the complainants are entitled to the relief sought. The law governing the opening and improvement of streets in the city of Pittsburgh, above referred to, is the general act of May 16, 1891 (P. L. 75), which provides that the damages sustained by the opening of streets shall be paid either in whole or in part by the municipal corporation, or in whole or in part by assessments upon the property benefited, as the viewers may determine and the court approve, and that the expenses of improving the streets shall be assessed upon the property benefited, according to the benefits, if sufficient can be found, but, if not, then that the deficiency, when finally ascertained, shall be paid by the municipal corporation. The ordinance for opening Beechwood avenue is in strict conformity with the terms of this act, and there is nothing on the face of the other ordinances to indicate an intention to depart from those terms. It seems to have been the judgment of city councils and a majority of the electors that the portion of the damages and expenses of opening and improving the two boulevards justly and legally chargeable against the city might reach the sum of $500,000. It is, we think, within the lawful power of the city to provide funds to meet this estimated liability, and the proposed issue and sale of bonds to that amount for that purpose is in conformity with the ordinances of councils and the action of the electors. It is not to be presumed that more of the fund so to be raised will be used in making these improvements than shall lawfully be applicable thereto agreeably to the determination of the viewers and approval of the court. No threatened misapplication of the fund is charged. The bill proceeds upon an imperfect view of the general system established by law for opening and improving streets in the municipalities of the state, including the city of Pittsburgh. Certainly, the complainants are not entitled to the specific relief prayed for, and, under the averments of the bill, we do not perceive that they are entitled to any relief. The demurrer to the bill of complaint is sustained.

BUFFINGTON, District Judge, concurs.