## Bullitt v. Philadelphia, Appellant.

*Municipalities—Increase of indebtedness—Signification of desire by councils—Ordinance—Notice of election—Assessed valuations—Act of April 20, 1874, P. L. 65.*

1. The direction in the Act of April 20, 1874, P. L. 65, relating to the increase of, municipal indebtedness, that the municipal authorities shall "by their ordinance or vote," signify "a desire to make such increase of indebtedness," is mandatory, and is not complied with by an ordinance in which the councils both ordain "that the debt of the said city shall be increased in the sum of eight million dollars," and direct that an election shall be held.

2. Where an election to increase the municipal indebtedness was held in the city of Philadelphia on the third Tuesday in February, 1910, and the notice required by the Act of April 20, 1874, P. L. 65, was first published on January 22, 1910, the last preceding assessed valuation which could have legally appeared in the notice was the assessment finally adjusted on or before February 1, 1909. If it appears that the figures which were actually published in the notice were $12,000,000 in excess of the assessment adjusted on or before February 1, 1909, the courts are bound to hold that the election held in pursuance of the notice was illegal and void. In such a case it is immaterial how the figures actually published were obtained.

Argued Jan. 23, 1911. Appeal, No. 378, Jan. T., 1910, by defendants, from decree of C. P. No. 4, Phila. Co., Dec. Term, 1909, No. 5,460, awarding an injunction in case of Logan M. Bullitt, Charles C. Binney, Barton C. Hirst, Charles F. Jenkins, Theodore J. Lewis, George D. Porter and Walter Wood v. City of Philadelphia, John E. Reyburn, Mayor of the City of Philadelphia, and John M. Walton, controller of the city and county of Philadelphia. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEW-. ART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for injunction to restrain the negotiation of a loan of $8,000,000.

From the record it appeared that on December 31, 1909, councils of the city of Philadelphia passed the following ordinance:

"Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That the debt of the said City shall be increased in the sum of eight million (8,000,000) dollars for the following purposes: For the purchase of sites and the erection of buildings for elementary schools, one million seven hundred and fifty thousand (1,750,000) dollars; for children's playgrounds, one hundred thousand (100,000) dollars; for the completion of filtration work at Queen lane, five hundred and twenty-five thousand (525,000) dollars; for repaving streets not occupied by passenger railways, two hundred thousand (200,000) dollars; for main sewers, two hundred and fifty thousand (250,000) dollars; for new bridges, one hundred thousand (100,000) dollars; for resurfacing with asphalt streets not occupied by passenger railways, three hundred thousand (300,000) dollars; for grading, three hundred thousand (300,000) dollars; for new macadam roads, one hundred thousand (100,000) dollars; for branch sewers, two hundred thousand (200,000) dollars; for paving intersections, one hundred thousand (100,000) dollars; for the improvement of the harbor, six hundred thousand (600,000) dollars; for the high pressure fire system in the mill district, five hundred thousand (500,000) dollars; for sites and erection, improvement and alterations to police and fire stations, two hundred and sixty-five thousand (265,000) dollars; for fire and police apparatus and equipment, one hundred thousand $100,000) dollars; for Cohocksink sewer, fifty thousand (50,000) dollars; for League Island Park, two hundred and fifty thousand (250,000) dollars; for mandamuses, one million (1,000,000) dollars; for Parkway, one million (1,000,000) dollars; for monument and history of Philadelphia soldiers and sailors, one hundred thousand (100,000) dollars; for restoration of Congress Hall, lighting Independence Hall and Square, sixty thousand (60,000) dollars; for the erection of hospital buildings for contagious diseases, one hundred and fifty thousand (150,000) dollars.

"Sect. 2. That for the purpose of obtaining the assent

of the electors to the increase of indebtedness set forth in Section 1, an election shall be held in pursuance of the Act of June 9, 1891, at the usual places of holding elections, at the election to be held on the third Tuesday of February, 1910, that notice of said election shall be given by the corporate authorities of the municipality by weekly advertisements, in not exceeding three newspapers of the said City, during at least thirty days prior to the said election, and the said notice shall contain a statement of the amount of the last assessed valuation of the taxable property of the said City, the amount of the existing debt, the amount of percentage of the proposed increase and the purpose for which the indebtedness is to be increased, and the City Commissioners are hereby authorized and directed to prepare and distribute the necessary ballots as provided for in the laws of the State of Pennsylvania governing the increase of indebtedness of municipalities."

In pursuance of the provisions of the second section of this ordinance, notice of the election which the ordinance directed should be held upon the third Tuesday of February, 1910, was given, by advertisement, in three newspapers in said city. These advertisements began on January 22, 1910, and were continued for four weeks. In the notice the amount of the last assessed valuation of taxable property in said city was stated to be $1,388,675,057. The existing net debt was stated to be $84,901,620.22. The amount of the proposed increase of indebtedness was stated to be $8,000,000. The percentage of the proposed increase of the indebtedness to the amount of the last assessed valuation of the taxable property of the said city was stated to be .0057$\frac{422789}{134337}$. The purposes for which the indebtedness of the city was proposed to be increased were stated to be the same as those which are set forth in the first section of the ordinance. At the election held on the third Tuesday of February, 1910, a majority of the electors voting on the question of the increase of the indebtedness voted in favor of such increase.

The court granted the injunction on the ground of the insufficiency of the notice and the failure of councils to signify by ordinance or vote its desire to increase the debt of the city.

*Error assigned* among others was decree awarding the injunction.

*James Alcorn,* city solicitor, and *John G. Johnson,* for appellants.—The ordinance was a sufficient compliance with the statute: Barr v. Philadelphia, 191 Pa. 438.

The election authorizing the increase of the city's debt was valid: Elliot v. Philadelphia, 229 Pa. 215; Selig v. Philadelphia, 19 Pa. Dist. Rep. 907; Seymour v. Tacoma, 6 Wash. 427 (33 Pac. Repr. 1059); Coloma v. Eaves, 92 U. S. 484; San Luis Obispo v. Haskin, 91 Cal. 549 (27 Pac. Repr. 929); Brown v. Street Lighting District, 70 N. J. Law, 762 (58 Atl. Repr. 339); Cheyenne v. State, 17 Wyo. 90 (96 Pac. Repr. 244); State v. Salt Lake, 35 Utah, 25 (99 Pac. Repr. 255); Dishon v. Smith, 10 Iowa, 212; Hesseltine v. Wilbur, 29 Wash. 407 (69 Pac. Repr. 1094).

*Thos. Raeburn White,* with him *Robert D. Jenks,* for appellees.—The requirements of the statute with regard to the publication of notice are mandatory: Hoffman v. Pittsburg, 229 Pa. 36; Clark v. Luzerne Boro., 196 Pa. 210; Whitherop v. Titusville School Board, 7 Pa. C. C. Rep. 451; Com. v. Blankenburg, 218 Pa. 339.

The statement of the amount of the "last assessed valuation" was substantially erroneous and misleading: Elliot v. Philadelphia, 229 Pa. 215; Chicago, etc., R. R. Co. v. Wilber, 63 Neb. 624 (88 N. W. Repr. 660).

Other cases which rule that the assessed valuation is only to be determined by an examination of the books, after final revision has been made, are: Levy v. McClellan, 196 N. Y. 178 (89 N. E. Repr. 569); Rathbone v. Kiowa County Commissioners, 27 C. C. A. 477 (83 Fed. Repr. 125); Board of Education of Huron v. National Life Ins.

Co., 36 C. C. A. 278 (94 Fed. Repr. 324); State v. Babcock, 24 Neb. 640 (39 N. W. Repr. 783); Kingsberry v. Pettis County, 48 Mo. 207; Hopper v. Inhabitants of Union Twp., 54 N. J. Law, 243 (24 Atl. Repr. 387); Wilson v. Board of Education of Huron, 12 S. D. 535 (81 N. W. Repr. 952); State v. Tolly, 37 S. C. 551 (16 S. E. Repr. 195); Prickett v. City of Marceline, 15 C. C. A. 700 (69 Fed. Repr. 462); Germania Savings Bank v. Town of Darlington, 50 S. C. 337 (27 S. E. Repr. 846).

The ordinance providing for the election was illegal, because not preceded by any ordinance or vote declaring the desire of councils for an increase of indebtedness: Hoyt v. East Saginaw, 19 Mich. 39.

OPINION BY MR. JUSTICE BROWN, February 27, 1911:

This appeal comes from a decree of court of common pleas No. 4 of the county of Philadelphia, enjoining an increase of the indebtedness of the city of Philadelphia, because two statutory requirements were disregarded by the municipal authorities in submitting to the electors of the city the question of the proposed increase.

New municipal indebtedness may be incurred and existing indebtedness increased to an amount exceeding two per centum upon the assessed valuation of property only with the assent of the electors of the municipality obtained "at a public election in such manner as shall be provided by law." These words of the constitution are always to be borne in mind in passing upon the validity of an election authorizing the creation of new or the increase of old municipal indebtedness. The assent of the electors is to be obtained at a public election and in such a manner as the legislature may direct. This clause in the constitution was not self-operative, and there was imposed upon the legislature the duty of declaring the manner in which new municipal indebtedness may be incurred or an existing one increased. When, therefore, the legislature directs the manner in which this may be done, its words must be regarded as mandatory, for in no other manner can the

municipality act in incurring new or increasing old indebtedness. If it attempts to do so in any other way than that pointed out by the legislature, the plain duty of the proper court, when appealed to, is to enjoin it, else the safeguard which the people have provided for themselves in their organic law will be no shield to them against municipal recklessness and improvidence. To hold municipal authorities to strict compliance with constitutional and legislative requirements involves no measure of hardship or inconvenience. On the other hand, it is easy to observe them, and, when they are plainly laid down as rules of municipal action, departure from them is almost certain to be followed sooner or later by trouble of some kind. Public authorities ought to understand this, especially after the repeated efforts of courts to enlighten them; and, when the requirements of the constitution and the statutes are disregarded, it becomes the plain duty of courts to enforce them.

The first legislation after the adoption of our present constitution, directing what must be done by a municipality when contemplating an increase of its indebtedness to an amount exceeding two per centum and not exceeding seven per centum upon the last preceding assessed valuation of the taxable property within the municipal limits, was the Act of April 20, 1874, P. L. 65. That act provides that whenever the corporate authorities of any city shall, by their ordinance or vote, have signified a desire to make an increase of municipal indebtedness, they shall give notice of a public election to be held for the purpose of enabling the electors to pass upon the question of the proposed increase. The first step, then, to be taken by a municipality, if its indebtedness is to be lawfully increased, is action by its authorities—in the case of a city, by its councils—indicating their "desire to make such increase of indebtedness," and such action must be taken by them "by their ordinance or vote." These words, which are repeated in the Acts of June 9, 1891, P. L. 252, and May 1, 1909, P. L. 317, are not merely directory; they

are mandatory, for the constitutional mandate is that municipal indebtedness shall not be increased to an amount exceeding two per centum without the assent of the electors of the municipality, obtained "at an election in such manner as shall be provided by law." The law provides that, before any such election can be held, notice of it is to be given by publication for at least thirty days; but, before such notice can be given, another requirement is that the corporate authorities "shall have signified a desire to make such increase of indebtedness." The words of the act are "whenever the corporate authorities of the city shall have signified" such a desire, they may then give the notice directed by the act, and, as still more clearly indicating the legislative intent that such action must first be taken, is the provision that the election shall take place on the day of the municipal or general election, "unless more than ninety days elapse between the date of the ordinance or vote desiring such increase and the day of holding the said municipal or general election." The question of the necessity of compliance by a municipality with the requirement of an expression by its authorities of a desire for the increase of indebtedness was considered and passed upon in Hoffman v. Pittsburg, 229 Pa. 36, where we said, inter alia: "In view of this foregoing clear statutory provision, twice repeated, the first step to be taken by a municipality in undertaking to increase its indebtedness is action by its corporate authorities, by ordinance or vote, expressive of their desire that the increase shall be made. With the wisdom of this legislation courts have nothing to do. . . . The constitutional requirement is that municipal indebtedness is to be increased to an amount exceeding two per centum upon the assessed valuation of taxable property only with the assent of the electors at a public election in such manner as shall be provided by law, and the statutory provision is that before such election can be authorized by the municipal authorities they must first act by giving expression, by 'ordinance or vote,' of their desire for the increase. If it were our

province to pass upon the wisdom of this provision, we would commend it. To the select and common councils of a city, as their representatives, its electors commit the direct supervision of the municipal affairs and what ought to be done or not done by the city should always, in the first instance, be passed upon by those whose special duties are to inform themselves as to the municipal needs and who are presumed to be able to act with more intelligence than the ordinary elector upon whatever affects the welfare of the municipality. Councils are deliberative bodies, possessing means not possessed by the electors generally of obtaining knowledge upon every subject relating to the welfare of the city, and the statutory requirement that they first signify their desire for an increase of indebtedness gives to the electors whom they represent the benefit of their deliberate judgment, after duly considering the necessity of making improvements and the cost thereof, that the increase ought to be made."

Neither by ordinance nor vote did the councils of the city of Philadelphia express their desire that the indebtedness of the city should be increased. What they did was to ordain "that the debt of the said city shall be increased in the sum of eight million ($8,000,000) dollars," and in the same ordinance proceeded to direct that an election should be held. But where did they get any authority to ordain that the said indebtedness should be increased? Their enactment was but a dead letter, for they were utterly powerless to increase the indebtedness before the electors of the city, in the manner provided by law, had authorized them to do so. And these electors could not have given them such authority until they, as the representatives of the electors, had, by ordinance or vote, as required by the statute, publicly expressed their desire for the increase. But we need not dwell further upon this feature of the case, as it is sufficient to know that the legislature has provided that a condition precedent to the right of municipal authorities to submit to the electors the question of an increase of municipal indebtedness is an ex-

pression by the authorities, in council assembled, of their desire that the increase be made; and, as this is a legislative requirement, it must be complied with: Hoyt v. East Saginaw, 19 Mich. 39. In that case the charter of the city provided that the common council should have full power to make necessary public improvements, directing, however, that when they should deem any such improvement necessary, they should so declare by resolution. A petition was presented to them for the grading of a certain street, and they resolved "that the petition be received and the improvement be ordered." The charter of the city merely required that when the common council deemed any improvement in the streets or highways necessary, they were to so declare by resolution; but there was nothing in the charter expressly directing that such resolution should precede the passage of an ordinance directing the improvement to be made. Nevertheless, the very learned COOLEY, C. J., in holding that such precedent resolution was necessary, said: "It may seem perhaps, that the legislature have been over particular in requiring from the council an express preliminary declaration that they deem the improvement necessary, when the fact that they order it to be made is evidence that such is their opinion; and it has been argued in this case that the resolution of June 11, 1866, ought to be accepted as equivalent to the one made necessary by the charter, and as a sufficient compliance with the legislative requirement. It is evident, however, that if we hold this resolution sufficient, we also hold that the provision cited from the charter is idle, and one a compliance with which may be dispensed with in any case. We have no authority to treat any part of a legislative enactment which is not ambiguous in itself and is capable of reasonable application, as so far unimportant that it is a matter of indifference whether it is complied with or not. We must suppose the legislature saw sufficient reason for its adoption, and meant it to have effect; and whether the reason is apparent to our minds or not, we have no discretion to dispense with a compliance with

the statute. . . . The declaration of the necessity for the improvement is a distinct act from and precedes the order that the improvement shall be made. It is the commencement of the proceeding, and is as indispensable to give the council jurisdiction as is process of the voluntary appearance of parties in civil actions to give jurisdiction to a court. It is the first of several steps, which if duly and regularly taken, may result in fixing a lien upon the property of the citizen, and even in depriving him of it against his will. This step having never been taken, the whole proceeding is a nullity." The rule as laid down in Hoffman v. Pittsburg, 229 Pa. 36, that the expression of desire by councils is to be by a separate and independent ordinance or vote, will not be pared down, and the disregard of this statutory requirement by the councils of the city of Philadelphia called, without more, for the injunction issued by the court below.

Keeping in mind that the right of the city to increase its indebtedness is to be exercised only as the statutes direct, we come to the second reason given by the learned court below in declaring the proposed increase invalid. The act of April 20, 1874, passed to give effect to the eighth section of art. IX of the constitution, provides that municipal indebtedness may be increased to an amount exceeding two per centum and not exceeding seven per centum upon the last preceding assessed valuation of the taxable property within the municipality, and a requirement of the act is, that before an election can be held to pass upon the proposed increase, thirty days' notice of it must be given to the electors, which notice must contain a statement of the amount of the last assessed valuation of property. The election in this case was held on the third Tuesday in February, 1910. The notice given to the electors that it would be held on that day was first published on January 22, 1910. In this notice the assessed valuation of property within the city was stated to be $1,388,675,057. Where or how these figures were obtained is utterly immaterial, if they were not those of the last preceding assessed

valuation of property. Under Elliot v. Philadelphia, 229 Pa. 215, the last preceding assessed valuation which could have appeared in the notice of the election published on January 22, 1910, was the assessment finally adjusted on or before February 1, 1909, and that was $1,376,645,955. These figures were accessible to the municipal authorities, and nothing was to be substituted for them. As stated, it is immaterial where the figures $1,388,675,057 were obtained. They are $12,000,000 in excess of the assessed valuation which was to guide the electors in voting. For this discrepancy, which the law will not permit, the city must start afresh if its indebtedness is to be increased. The assignments of error are overruled and the decree affirmed at the cost of the city of Philadelphia.