Breslow *v.* Baldwin Township School District.

122

Argued April 24, 1962.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Sidney M. Ruffin,* with him *John E. Perry,* and
*Burgwin, Ruffin, Perry & Pohl,* for plaintiffs.

*Edward R. Lawrence,* with him *Paul, Lawrence &
Rock,* for defendant.

*George F. Baer Appel,* with him *Benjamin R. Town-
send, James J. Prendergast,* and *Townsend, Elliott &
Munson,* for Local Government Conference, under Rule
65.

OPINION BY MR. CHIEF JUSTICE BELL, June 28, 1962:
. Was the amendatory Act of 1961 defining "assessed
value" as *market* value, in determining an increase of
debt of a school district, constitutional?

Plaintiffs, who are residents and taxpayers of the
School District of Baldwin Township, Allegheny Coun-
ty, filed a complaint in this Court seeking to enjoin
the defendant School District, a corporation, from
issuing and selling a proposed $2,500,000 issue of
general obligation bonds of the Baldwin Township
School District.

This Court assumed original jurisdiction in this
case under the provisions of Article V, §3, of the Penn-
sylvania Constitution which pertinently provide: "The
jurisdiction of the Supreme Court shall extend over
the State, and the judges . . . shall have original juris-
diction in cases of injunction where a corporation is
a party defendant, . . ." Such jurisdiction extends to
corporations municipal in nature: *Hyam v. Upper*

*Montgomery Joint Authority,* 399 Pa. 446, 160 A. 2d 539, and cases cited therein.

The relevant facts which are not in dispute are as follows:

On January 10, 1962, defendant's board of directors, without the consent of the electorate, adopted a resolution authorizing the issue and sale of $2,500,000 principal amount of general obligation bonds of the defendant school district and set May 9, 1962, as the date for the receipt of bids for said bonds. This resolution was adopted pursuant to §§201 and 203 of the Municipal Borrowing Law of June 25, 1941, P.L. 159, 53 PS §§6201 and 6203, which pertinently provide as follows:

"Section 201. Limitation on municipal debt.

"Whenever the net debt of any municipality* shall be equal to . . . seven per centum, in the case of all other municipalities (except school districts of the first class which shall be limited to two per centum), *of the assessed valuation,*\*\* it shall be unlawful to increase the same by borrowing money (except in the case of issuing evidences of debt in anticipation of current revenues), and any such increase shall be void, and any general obligation bonds issued to evidence such increase of debt shall be of no binding force upon such municipality. . . ."

"Section 203. Increase of debt by issuance of general obligation bonds by corporate authorities and with the assent of electors.

"(a) Any municipality may incur debt or increase its debt by the issue of general obligation bonds by vote

---

\* Section 102(a) of the Act, as amended, defines "municipality" as follows: "(a) 'Municipality', a county, city, borough, incorporated town, township, *school district* and a county institution district. The word does not include a city of the first class, a county of the first class or a city institution district."

\*\* Italics throughout, ours.

of the corporate authorities thereof *without the assent of the electors* to an amount in the aggregate not exceeding two per centum *of the assessed valuation.*
. . ."

The words "assessed valuation" as used in the Municipal Borrowing Law, supra, are defined in §102 (h), as amended by §1 of the Act of July 28, 1961, P.L. 917, to mean "market value".

"(h) 'Assessed valuation', the market valuation of all property at such rates and prices for which the same would separately bona fide sell taxable in the municipality for the purposes of the municipality, as last *determined by* the board, bureau or persons *charged by law with the duty of determining the valuation of such property for tax purposes,* or in any municipality in which the board, bureau or persons charged by law with the duty of determining the value of such property for tax purposes does not fix the market valuation of property, such market valuation shall be the market valuation fixed and certified by the State Tax Equalization Board."

The assessed value of the taxable property within the school district determined by persons charged by law with the duty of determining the valuation of such property for tax purposes was $93,243,741, two per cent of which is $1,864,874.

However, when defendant's board of directors adopted the resolution authorizing the $2,500,000 bond issue, the *market* valuation of taxable property in defendant school district was certified by the State Tax Equalization Board to be $168,572,600, two per cent of which is $3,371,452. The proposed bond issue was thus well within the limitation of two per cent of the *market valuation* of property within the school district, as fixed and certified by the State Equalization Board, but beyond the value fixed by the tax assessing authorities. The question here involved is which is the

proper test, in the light of the Constitution and the amendatory Act of 1961.

Plaintiffs contend that the definition of market value placed upon the term "assessed valuation" in and by the Municipal Borrowing Law, as amended in the Act of 1961, supra, violates *Article IX, Section 8,* of the Pennsylvania Constitution. *Section 8* pertinently provides:

"The debt of any county, city, borough, township, school district, or other municipality or incorporated district, except as provided herein, and in section fifteen of this article, shall never exceed seven (7) per centum upon *the assessed value of the taxable property* therein, nor shall any such county, municipality or district incur any debt, or increase its indebtedness to an amount exceeding two (2) per centum upon *such assessed valuation of property,* without the consent of the electors thereof at a public election in such manner as shall be provided by law."

If the amendatory Act of 1961 is valid, the proposed issue is valid. The Act is presumed to be valid and constitutional, and plaintiffs have the burden of proving that it clearly and plainly violates the Constitution: *Cali v. Philadelphia,* 406 Pa. 290, 177 A. 2d 824; *Prichard v. Willistown Township School District,* 394 Pa. 489, 147 A. 2d 380; *Dauphin Deposit Trust Company v. Myers,* 388 Pa. 444, 130 A. 2d 686; *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 166, 87 A. 2d 480; *Evans v. West Norriton Township Municipal Authority,* 370 Pa. 150, 87 A. 2d 474.

We turn then to the Constitution. Where in the Constitution "the words are plain . . . [they] must be given their common or popular meaning, for in that sense, the voters are assumed to have understood them when they adopted the constitution: Busser v. Snyder, 282 Pa. 440, 449, 128 A. 80:" *Lighton v. Abington Township,* 336 Pa. 345, 354-355, 9 A. 2d 609. See to the

same effect *Peoples Bridge Co. v. Shroyer, Secretary of Highways*, 355 Pa. 599, 607, 50 A. 2d 499.; *Collins v. Kephart*, 271 Pa. 428, 441, 117 A. 440; *Long v. Cheltenham Township*, 269 Pa. 472, 475, 112 A. 545; *Com. ex rel. Lafean v. Snyder*, 261 Pa. 57, 63, 104 A. 494.

It is a matter of common knowledge that in nearly every township, county and city in Pennsylvania, property is assessed for tax purposes lower than its market value. The assessed value of taxable property for tax purposes usually varies between 15 and 70 per cent of its actual market value. To the people and voters of Pennsylvania, the words "assessed value" have a plain common popular meaning. They are almost universally understood in their common popular sense or meaning to mean just what they say—the value at which they are assessed by the taxing authorities and not their market value. Furthermore, if one or more parcels of real estate or buildings are assessed at their market value—based upon a sale by a willing seller to a willing purchaser—and the other taxable properties are assessed on an "assessed value" which is lower than market value, the Uniformity clause of the Constitution requires the assessed value to prevail: *Brooks Building Tax Assessment Case*, 391 Pa. 94, 137 A. 2d 273.

Moreover, in numerous cases the Courts have interpreted the meaning of the words "the last preceding assessed valuation" *in a statute for the purpose of determining debt limitation*, to mean the last preceding assessment *for the purpose of taxation*. Cf. *McGregor Estate v. Young Township*, 350 Pa. 93, 38 A. 2d 313; *Duane v. Philadelphia*, 322 Pa. 33, 185 A. 401; *Bullitt v. Philadelphia*, 230 Pa. 544, 79 A. 752; *Elliot v. Philadelphia*, 229 Pa. 215, 78 A. 107. See also *Bruce v. Pittsburg*, 166 Pa. 152, 30 A. 831.

This has likewise been the meaning given to the words "assessed value" by the leading text authorities.

In speaking of debt limitations, 15 McQuillin, Municipal Corporations (3rd ed. 1950), states (page 311) : "The standard is generally the assessed value of the property for taxation, rather than the actual value, where the two are different; . . ." 1 Dillon, Municipal Corporations (5th ed. 1911), expresses a like opinion (pages 403-404) : "The 'assessed value' means the value placed upon property for the purpose of taxation by officials appointed for that purpose, and not the actual or real or market value of the property."

Defendant would have us adopt one test for borrowing and a very different test for the purpose of taxation, even though each is based upon and limited to the *assessed value* of the taxable property as ordained in the Constitution. This is clearly unreasonable and is merely an obvious attempt to circumvent the Constitution and double or triple the borrowing capacity of municipalities.

More ingenious is defendant's contention that the law has always required assessments for taxation purposes to be made at market value, and even though assessments have not been normally so made, they should have been so made and consequently the Legislature is not constitutionally prohibited from using market value as the proper and valid yardstick for determining debt limitations. For reasons above mentioned, this is unsound. If this were sound, all that any Legislature would have to do, in order to circumvent the Constitution, is to pass an Act defining or redefining any term or any language used in the Constitution to suit its purpose or objective.

We find no merit in any of defendant's contentions, and consequently deem it unnecessary to discuss any additional constitutional or legal contentions made by plaintiffs.

The amendatory Act of July 28, 1961 is unconstitutional, null and void, and the Board of School Directors

of the School District of the Township of Baldwin, County of Allegheny, Pennsylvania, is hereby restrained and enjoined from incurring any indebtedness under the provisions of this Act.

Costs to be paid by defendant.

---

CONCURRING OPINION BY MR. JUSTICE COHEN:

Article IX, §8 of our Constitution requires that the debt of a municipality should not exceed a certain percentage of the assessed valuation of the municipality.

By the Act of 1961, the legislature sought to require that the assessed valuation be obtained in a certain manner and if not so obtained, then the market values established by the State Tax Equalization Board were to be used in determining the amount of debt which a municipality could incur. There is no constitutional grant that permits the market valuation as determined by the State Tax Equalization Board to be used; hence, an act utilizing such market valuation as the base in the creation of a municipal debt limit is unconstitutional.

Mr. Justice BENJAMIN R. JONES joins in this concurring opinion.