## Erie School District v. Erie County Board of Assessment Appeals (No. 1)

*John W. Beatty,* for plaintiff.
*Ira John Dunn,* for defendant.
*Robert N. Spaeder,* for intervenor taxpayers.

McCLELLAND, *J.,* August 29, 1980—Although the pleadings are endless, essentially the court has been asked in a stipulation of the parties to decide the "deadline issue."

Basically, in 1979 the council of Erie, Pennsylvania eliminated the city assessment bureau and decided to adopt the county assessment for city property in 1980.

The basic assessments of city property changed and assessment appeals flooded into the office of the Erie County Board of Assessment.

The board heard appeals in a most diligent manner and completed the hearings and changes in December, 1979. The appeals could not be completed by the so-called deadline date of October 31, 1979.

The issue to be decided is: does the failure of the Erie County Board of Assessment to complete the appeals before October 31, 1979 render post-October 31, 1979 decisions void?

The school district of the City of Erie stands to lose thousands of dollars and contends the date of October 31, 1979 is mandatory. In short, the school district's main attack on the validity of the reduc-tions is based on the fact that appeals were heard and/or decided after the October 31st deadline. The October 31st deadline applies to only a certain type of appeal. Specifically, only appeals brought pursuant to the Act of June 26, 1931, P.L. 1379, sec. 8, 72 P.S. §5349(c), are subject to the deadline; appeals under section 5349(b) are exempt from the deadline. Therefore, the initial inquiry must be: which type of appeal is involved in the instant case?

The characteristics of a section 5349(b) appeal appear threefold:

1. The property involved was not previously valued separately *or* the value was changed;

2. Notice of the separate valuation or change in value was mailed within five days; and

3. An appeal was filed within 40 days of the notice date.

The ultimate question, then, appears to be whether the *value* of the property was changed from that recorded in the former assessment. The major change resulting from the elimination of the

city assessment office was a shift from 100 percent city valuations to 100 percent county valuations for city and school district tax purposes. Our inquiry thus narrows to whether this shift in reliance on city valuations to county valuations constitutes a change in value as that language is used in section 5349.

Since we are construing a statute, we are bound by the statutory definition of the words contained therein. Unfortunately, the particular word we are examining, "value," is nowhere defined in the act. Under the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1903(a), recourse must be had to common understanding. See, also, Township of Derry, Dauphin County v. Swartz, 21 Pa. Commonwealth Ct. 587, 346 A. 2d 853 (1975).

Black's Law Dictionary (5th Ed. 1979) defined "assessed valuation" as: "Value on each unit of which a prescribed amount must be paid as property taxes. The worth or value of property established by taxing authorities on the basis of which the tax rate is applied. . . ."

The Pennsylvania Supreme Court defined "assessed value" in Breslow v. Baldwin Township School District, 408 Pa. 121, 126-127, 182 A. 2d 501 (1962):

"It is a matter of common knowledge that in nearly every township, county and city in Pennsylvania, property is assessed for tax purposes lower than its market value. The assessed value of taxable property for tax purposes usually varies between 15 and 70 per cent of its actual market value. To the people and voters of Pennsylvania, the words 'assessed value' have a plain common popular meaning. They are almost universally understood in their common popular sense or meaning to mean

just what they say—the value at which they are assessed by the taxing authorities and not their market value. Furthermore, if one or more parcels of real estate or buildings are assessed at their market value—based upon a sale by a willing seller to a willing purchaser—and the other taxable properties are assessed on an 'assessed value' which is lower than market value, the Uniformity Clause of the Constitution requires the assessed value to prevail: Brooks Building Tax Assessment Case, 391 Pa. 94, 137 A. 2d 273.

"Moreover, in numerous cases the courts have interpreted the meaning of the words 'the last preceding assessed valuation' in a statute for the purpose of determining debt limitation, to mean the last preceding assessment for the purpose of taxation. Cf. McGregor Estate v. Young Township, 350 Pa. 93, 38 A. 2d 313; Duane v. Philadelphia, 322 Pa. 33, 185 A. 401; Bullitt v. Philadelphia, 230 Pa. 544, 79 A. 752; Elliot v. Philadelphia, 229 Pa. 215, 78 A. 107; See also Bruce v. Pittsburg, 166 Pa. 152, 30 A. 831.

"This has likewise been the meaning given to the words 'assessed value' by the leading text authorities.

"In speaking of debt limitations, 15 McQuillin, Municipal Corporations (3rd ed. 1950), states (page 311): 'The standard is generally the assessed value of the property for taxation, rather than the actual value, where the two are different; . . .' 1 Dillon, Municipal Corporations (5th ed. 1911), expresses a like opinion (pages 403-404): 'The assessed value means the value placed upon property for the purpose of taxation by officials appointed for that purpose, and not the actual or real or market value of the property.'"

While no appraisers were dispatched to reassess the values of city property, this court finds that a change in reliance from the city assessment to the county values constituted a change in value as that term is used in 72 P.S. §5349. The parties agreed that, except as a matter of coincidence, the values placed on city property increased when the more current county figures were used. The adoption by the city and the school district of the 1969 county assessments was tantamount to a reassessment of city property in 1979 even though 1969 figures were used, no physical reappraisal was conducted, and the change was limited to city property.

Since we conclude that the October 31st deadline did not apply to the types of appeals involved in this case, we need never reach the "deadline issue" so extensively argued by the parties.

## ORDER

And now, August 29, 1980, it is ordered, adjudged and decreed:

1. The move from city assessment values to county assessment values constituted a change in value which resulted in the filing of numerous section 5349(b) appeals;

2. The October 31st deadline does not apply to section 5349(b) appeals, 72 P.S. 5349(b);

3. The failure to meet the October 31st deadline does not void reductions granted pursuant to the appeals in question.