## McGregor Estate, to use, Appellant, v. Young Township.

Argued March 21, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*Walter E. Morris,* with him *Robert M. Morris,* of *Morris & Morris,* for appellant.

*Lavelle A. Wilson* and *George H. Kurtz,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 30, 1944:

This action in assumpsit was brought by the plaintiff against the Township of Young in Jefferson County, a municipal corporation, on a note for $29,000.00, dated April 4, 1927, payable on demand, and executed and delivered by the ten supervisors of Young Township, and attested by the then Secretary of the Board of Supervisors.

Young Township, a township of the second class, on February 2, 1924, by resolution petitioned, through its Supervisors, the Commissioners of Jefferson County for the construction of a highway in the Township under the state and county aid plans, and agreed to pay out one-fourth of the total cost of the improvements, the Commonwealth was to pay the same, and the County of Jefferson was to pay 50% of the cost. The last preceding assessed valuation of the taxable property in the Township *at the time this resolution was passed* was that made for the year 1923, which amounted to $419,530.00. The highways were constructed and completed in 1926, and Jefferson County advanced and paid the township share of $42,847.87 as well as its own share. To defray the cost of these highways it was necessary to increase the indebtedness of the township in the sum of $29,000 and obtain the assent of the electors of the township to such an increase.

At a meeting held in the Township on March 1, 1924, the Supervisors of the Township unanimously adopted and recorded a resolution setting forth its desire and intention to increase the indebtedness of the Township by an issue and sale of coupon bonds, at the rate of 4½% per annum clear and free of all taxes, for the purpose of providing sufficient funds for these roads. Such bonds to be in an amount not exceeding $29,000 and being 6.9 per centum, plus, of the last adjusted valuation of the taxable property in the said township

after deducting other indebtedness, if any, of the said township, and decreed a special public township election to be held on April 22, 1924, for the purpose of obtaining the assent of the electors to such an increase. This resolution also set forth that "notice of said special and public township election shall embody a full copy of this resolution . . ." and, that as soon as the assent of the qualified electors was obtained and before the bonds were issued, an annual tax would be levied and assessed on the assessed valuation of the taxable property of the township, for each succeeding year and until all of the bonds and interest and all taxes thereon were fully paid. This resolution contained a financial statement showing that the amount of the last assessed valuation of the taxable property of the township to be $419,530 (the 1923 assessment), the total present indebtedness to be none and the actual net increase of the township indebtedness by the issue of such bonds to be $29,000. The official notice and special election proclamation contained an exact copy of the resolution. Pursuant to this election proclamation, a special public election was held for this purpose on April 22, 1924, and the increase of indebtedness was assented to by the electors.

On February 25, 1926, the Board of Supervisors unanimously adopted a resolution referring to the resolution of March 1, 1924, summarizing the contents thereof and stating that the election had been held on April 22, 1924, that the assent of the qualified voters had been obtained to the increase of indebtedness and authorizing the incurring of the bonded debt of the township in the sum of $29,000. This resolution for the purpose of creating a fund for the payment of the principal and interest and taxes on the bonds set forth that "There is hereby levied an annual tax of —— mills on all taxable property of the said Township, the collection of which shall begin in the year one thousand

nine hundred and twenty —— and to continue and include the year one thousand nine hundred and fifty-six." All proceedings in connection with the election were filed in the office of the Clerk of the Court of Quarter Sessions of Jefferson County and were admitted in evidence. The township, however, was unable to sell the bonds issued as authorized by the electors. Thereupon, the Supervisors met on April 2, 1927, and passed a resolution wherein they continued their obligation to Jefferson County for the Township's share of the cost of the highways and set forth that this increase of indebtedness was authorized by the electors, and further authorized a loan of $29,000 from one Gilbert McGregor of Punxsutawney, Pa., on the credit of Young Township, for the payment of its indebtedness to the County. A note was drawn on April 4, 1927, and the plaintiff's assignor, Gilbert McGregor, loaned the $29,000 to the township. Interest was paid on this note until March 7, 1929. Mr. McGregor died and thereafter, on December 19, 1939, his estate transferred the note to his sister, the plaintiff.

The defense was that the note upon which this action is based is illegal and void in that it was given to secure a loan in excess of seven per centum of the "last preceding assessed valuation of taxable property" within defendant Township as last fixed and determined before the election authorizing the debt which was in violation of the express provisions of section 8 of article IX of the Constitution.[1] It was also alleged that the note was

---

[1] Article IX, Section 8 of the Constitution of Pennsylvania provides that "the debt of any township, school district or other municipality or incorporated district . . . shall never exceed seven per centum upon the assessed value of the taxable property therein, nor shall any such municipality or district incur any new debt or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property, without the consent of the electors thereof at a public election in such manner as shall be provided by law."

also illegal and void under section 10 of article IX of the Constitution, because the Supervisors failed, at or before the time of issuing the note in question, to provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within 30 years.[2]

The parties by written agreement dispensed with a trial by jury and submitted the decision to the court as provided by the Act of April 22, 1874, P. L. 109 (12 PS 688). The court below found that while the purpose for which the debt of $29,000 was authorized by the electors, was lawful, that the defendant's note, calling for the payment of $29,000 exceeded the constitutional percentage authorized on the assessment value of the property and exceeded the current revenues due or created within the year and was illegally issued and therefore void, and entered judgment for the defendant. This appeal followed.

The court below also found that "the last preceding assessed valuation of the taxable property" [3] in Young Township which was fixed and determined before the township election held on April 22, 1924, was $412,955 (the 1924 assessment), and that seven per cent of that valuation is $28,906.85, and the $29,000 debt was, therefore, $93.15 over the constitutional limitations. The court also found that the actual authorized outstanding indebtedness which was obtained without the assent of the qualified electors of Young Township on April 4, 1927, was at least $6,800 prior to the execution of the $29,000 note on which suit was brought. A further finding was that "no annual tax for the payment of the interest and all of the principal of said $29,000 note

---

[2] Section 10 of Article IX provides that "any . . . township . . . incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years."

[3] This phrase is quoted from the Act of 1874, P. L. 65, sec. 2, as amended, 53 P.S. 1872 (post).

was assessed and levied as required by law at or before the issuance of said note and its delivery to the plaintiffs, or since that date."

These findings, except the last one, are not challenged but appellant contends that the assessed valuation for the year *1923* which was $419,530 was the last preceding assessed valuation of the taxable property in Young Township which was fixed and determined before February 2, 1924, when the township agreed to pay its share for the cost of the roads, and before March 1, 1924, when the "desire" resolution calling for the election was adopted. Twenty-nine thousand dollars would be only 6.9 per cent. of the assessed valuation *as fixed in 1923*. The appellant further contended that the Supervisors of Young Township in the election proceedings filed in the Court of Quarter Sessions, both before and after the election held on April 22, 1924, set forth that the last assessed valuation of the property in Young Township was $419,530 (the 1923 assessment). Appellant also calls attention to the fact that the note sued upon contains a certificate to the effect that $29,000 does not exceed seven per cent. of the last assesssed valuation preceding the public election held on April 22, 1924, and that the Township therefore "is now estopped from setting up any defense against plaintiff's claims." The additional indebtedness which the court found was $6,800 when the $29,000 was actually borrowed on April 4, 1927, the appellant urges could only be classed as a debt created within its revenues, regardless of existing indebtedness. As to the court's finding that no annual tax for the payment of the debt and interest had been levied as required by law, the appellant contended that the resolutions indicated that an annual tax would be levied and assessed for the payment of the principal and interest of the money and that five mills would have been more than sufficient to pay the debt, interest and state tax on the obligation within a

period of thirty years, and that the Supervisors did actually levy and collect beginning with the year 1927, when they obtained the $29,000 loan from Mr. McGregor, an extra five mills for the purpose of providing funds to pay this debt and interest and that this continued annually for some six years thereafter.

The basic disputed point is whether the 1923 or the 1924 valuation constituted "the last preceding valuation of the taxable property" upon which the debt limit was to be ascertained. Section 3 of the Act of April 20, 1874, P. L. 65, as amended (53 PS §§ 1873, 1874), provides: "The indebtedness of any county, city, borough, township, school district, or other municipality or incorporated district, in this Commonwealth, may be authorized to be increased to an amount exceeding two per centum, and not exceeding seven per centum, upon the last preceding assessed valuation of the taxable property therein, with the assent of the electors thereof, duly obtained at a public election to be held in the said district or municipality." Section 3 further provides: "Whenever the corporate authorities of any . . . township . . . by their ordinance or vote shall have signified a desire to make such increase of indebtedness, they shall give notice during at least thirty days, by weekly advertisements . . . of an election to be held . . . for the purpose of obtaining the assent of the electors thereof to such increase of indebtedness. Said notice shall contain a statement of the amount of the last assessed valuation, of the amount of the existing debt, of the amount and percentage of the proposed increase, and for the purposes for which the indebtedness is to be increased."

These sections prescribe the manner in which the indebtedness of a municipality may be authorized to be increased within the constitutional limitations. Have the supervisors of this Township complied with this legislative prescription? The evidence shows that the corporate authorities, on March 1st, 1924, by due Ordinance indicated "a desire to make such increase of in-

debtedness." Having signified such a desire, the act directs that they shall give notice of an election to be held to obtain the consent of the electors to such an increase. The Act expressly provides the requisites of the notice. This Board of Supervisors proclaimed in the ordinance an election and fixed the time therefor, and then provided the form of the notice to be given, which notice contained the indispensable informaiton required by the Act, inter alia, "the amount of the last assessed valuation" stated to be $419,530, the amount of the 1923 valuation, and the amount of the proposed increase," as $29,000. This was done in compliance with the mandatory requirements of the act.

The court below held that on March 1, 1924, when the Supervisors signified a desire to increase the debt *and prior to the election held on April 22, 1924,* the assessed valuation was $412,955, for "the Commissioners issued their certificate as a Board of Revision on March 1, 1924, and the latter action not only fixed the date when the last preceding adjusted valuation was made, but likewise the correct amount thereof."

The first question is when was "the indebtedness" of this township "authorized to be increased to an amount . . . not exceeding seven per centum upon the last preceding assessed valuation." The answer must be that the first step in the authorization was the act of the Supervisors on March 1, 1924. The assent of the electors to this increase in indebtedness was not obtained until April 22, 1924. If we determine what was "the last preceding valuation of the taxable property" in the township from the "vantage ground" of April 22, 1924, the answer must be the assessment of March 1, 1924. If we determine this question from the "vantage ground" of the date when the increase of indebtedness was formally "desired" by the Supervisors, March 1, 1924, our answer must be the assessment of 1923. It would not be reasonable to hold that the Supervisors' meeting on March 1, 1924, would regard a valuation

made *that* day by the Board of Revision as "the last preceding valuation." This record does not show on what hour on that day the valuation was made for the year 1924. There is no proof that it was made before the resolution of the Supervisors was passed. The record shows only that the Commissioners of Jefferson County issued a book entitled "Adjusted Valuation of Young Township for 1924 *under date* of March 1, 1924" (italics supplied). That does not prove that the book was issued *on* that date or that it was issued before the Supervisors acted on March 1, 1924.

The question then arises, is April 22 the date from whose "vantage ground" the last "preceding valuation of the taxable property" in the township must be determined? It is clear that the Supervisors and the voters acted on the theory that April 22 was *not* the controlling date for in the resolution of March 1, 1924, which was incorporated in the "Official Notice and Special Election Proclamation" duly advertised by the Supervisors, it was set forth that the proposed bonded indebtedness "not to exceed twenty-nine thousand dollars" was 6.9% of the last adjusted valuation of the taxable property," meaning thereby the 1923 valuation. The Official Notice also specifically stated that "the amount of the last assessed valuation of the taxable property of said township is the sum of $419,530." That was the *1923* valuation. This was *the fact* officially presented by advertising to the voters when they were asked to give on April 22, 1924, their assent to the proposed increase of indebtedness.

We held in *Duane v. Philadelphia, et al.,* 322 Pa. 33, 185 A. 401, that the date of a loan's authorization and not the date of the resulting bond issue is the vital date in determining the loan's validity. Appellants contend that the assent given by the electors to this loan on April 22, 1924, dated back to March 1, 1924, when the Supervisors by resolution proclaimed their "desire and intention to increase the indebtedness of the Township of

Young to an amount not to exceed $29,000" and then and there and for thirty days thereafter set forth in an Official Notice (as the law required) a financial statement showing that $419,530 was "the last assessed valuation of the taxable property" in that township, i. e., the 1923 valuation. It is clear that the date of the resolution of "desire and intention" was the date when the facts as to the township's indebtedness should be determined and announced to the electors whose assent to the proposed increase of indebtedness had to be secured before the increase could be made. The date on which the Supervisors of Young Township performed this important duty was March 1, 1924. They were justified *on that date* in regarding as they did the 1923 assessment as "the last preceding assessed valuation of taxable property" in Young Township.

This is a sensible interpretation of the provisions of the Act of 1874, supra. As was said by Justice FIELD, speaking for the Supreme Court of the United States, in *United States v. Kirby,* 7 Wallace 482, 486: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. . . . The reason of the law in such cases should prevail over its letter." [4] This was reiterated in *Chew Heong v. United States,* 112 U. S. 536, 555.

The Statutory Construction Act of May 28, 1937, P. L. 1019 (46 P.S. 551), declares (section 51): "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature." Section 52 declares that "in ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumption: (1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable."

---

[4] See also 25 R. C. L., sec. 256, page 1018, *Cooper Mfg. Co. v. Ferguson, et al.,* 113 U. S. 727, and *Big Black Creek Improvement Co. v. The Commonwealth,* 94 Pa. 450.

This rule is only a statutory expression of a precept that has immemorially guided courts in construing statutes. Applying this principle of interpretation in *Watson v. Witkin*, 343 Pa. page 1, 22 A. 2d 17, we held that the phrase in the Philadelphia Charter Act: "next election occurring more than 30 days after the commencement of such vacancy" in a municipal office must be interpreted in such a way as to give the primary election machinery provided for in the Election Code of June 3, 1937, P. L. 133, time to function so as to produce regularly nominated candidates for the office or offices to be filled at the "next election," and that the words "next election" as used in the Charter Act meant not necessarily the next election *in point of time,* but the next election after the lapse of *the time required* for the carrying out of all the essential provisions of the Election Code in both the nomination and election of public officers.

Applying the same reasoning to the instant case, the phrase "last assessed valuation" should be given such a reasonable interpretation that neither a person contemplating loaning money to the borrowing municipality nor the tax paying voters of that municipality should be misled to the hurt of either or any of them. It is clear from the record that all parties in interest, including McGregor, who parted with $29,000 on the assurance of the statement officially made, and the Supervisors and the voters themselves had ample reason to regard the 1923 valuation as "the last preceding valuation" of property in Young Township when they acted as they did. There was certainly nothing to lead either McGregor or the voters to believe that the 1924 assessment as handed down by the Board of Revision "under date" of March 1, 1924, was "the last preceding assessed valuation" within the meaning of the statute.

To hold that the adjusted valuation of Young Township for 1924, issuing out of the Commissioner's office "under date" of March 1, 1924, which is the same date the Supervisors passed their resolution setting forth

the Township's "desire and intention to increase its indebtedness" is the *last preceding* assessed valuation of the taxable property therein within the meaning of the applicable Act of Assembly regulating the increase of a municipality's indebtedness, is an interpretation which under the circumstances here present is unreasonable and leads to injustice and oppression. The estate of Gilbert McGregor should not be denied the payment of the $29,000. Mr. McGregor advanced to the Township in the utmost good faith and in reliance upon official statements, for the construction of a highway because possibly on the same day the supervisors began to take the steps necessary to secure this highway and the money to pay for it, the assessed valuation of the property in that Township was reduced just enough by the County Commissioners, acting as a Board of Revision, to put the $29,000 borrowed from him over the constitutional limit to the extent of $93.95 unless *we are bound* to construe the provisions of the Act of 1874 above quoted so as to bring about this unjust and oppressive result. Giving the applicable act a "sensible construction" we are not so bound. What the U. S. Circuit Court of Appeals for the 8th Circuit in *Sidey v. City of Marceline, Mo.*, 237 Fed. 168, said in an opinion by Judge AMIDO, applies in its statement of policy to the instant case, to-wit: ". . . the object of the constitutional limitation . . . defining the assessment that should fix the value of the property for bonding purposes was to select an assessment *sufficiently remote from the bond issue,* so that property could not have been assessed for the purpose of laying a foundation for incurring the debt. To sustain plaintiff's position would defeat the object of the constitution and make it possible to base a bond issue upon an assessment *so near that it could be manipulated* for the very purpose of evading the constitution . . ." (italics supplied).

In *Bullitt v. Philadelphia,* 230 Pa. 544, 79 A. 752, this court declared that "a condition precedent to the

right of municipal authorities to submit to the electors the question of the increase of municipal indebtedness is an expression by the authorities, in council assembled, of their desire that the increase be made." We said further that "before an election can be held to pass upon the proposed increase, thirty days' notice of it must be given to the electors, which notice must contain a statement of the amount of the last assessed valuation of property. The election in this case was held on the third Tuesday in February 1910," i. e., on February 15th. The notice given to the electors that it would be held on this day was first published on January 22, 1910. In that notice the assessed valuation of property within the city was stated to be $1,388,675,057. These were in fact the figures "finally adjusted" formally on February 1, 1910, and of which the council must have had "advance notice" when they began their advertising on January 22nd. This Court said: "Where or how their figures [those of February 1, 1910] were obtainable is utterly immaterial" because "they were not those of the last preceding assessed valuation of property." We declared that the "figures [which] were accessible to the municipal authorities" were those of "the assessment finally adjusted on or before February 1, 1909, and nothing was to be substituted for them." The appositeness of this decision to the question now before us is this: This court there *refused* to take as the "vantage ground" from which "the last preceding assessed valuation" was to be determined *the date the electors* authorized the loan. In the *instant* case the Court said: "The date the electors of Young Township authorized the $29,000 loan, April 22, 1924, was the date as of which the validity of its $29,000 note sued on is to be determined."

In *McGuire v. Philadelphia (No. 2)*, 245 Pa. 307, 310, 91 A. 628, this court took as the date "the last assessed valuation of taxable real property" was to be determined, the date of the ordinance in which "the cor-

porate authorities [5] signified their desire to increase the indebtedness of the city in the sum of $12,900,000." The election for the purpose of obtaining the assent of the electors to the proposed increase of indebtedness was held on March 31st. While the choice of either of these dates as the "vantage ground" from which to determine the last valuation did not affect the decision on the question involved in that case, it is of significance that the date of the enactment of the ordinance signifying the "desire to increase the indebtedness" was accepted as a matter of course as the date on which the view was to be taken to ascertain *which* assessed valuation was the "last preceding" one. The decision in this case emphasized the importance of the public notice to be given by advertisement of the proposed increase of indebtedness and the court pointed out that the statute required the public notice shall contain, "inter alia, the amount of the existing debt" (and, of course, "the last preceding assessed valuation",) so that "the electors" can "act not only intelligently but prudently in casting his ballot for or against a proposed increase of the indebtedness."

We cannot accept the conclusion of the court below that the decisive date on which to identify for the purpose of deciding this case "the last preceding assessed valuation of the taxable property" in Young Township was April 22, 1924, the date the electors assented to the increase in the township's indebtedness. The date on which such voting takes place is not a practicable one to be used as the decisive one in matters of this kind, as this court indicated by its decision and opinion in *Bullitt v. Philadelphia*, supra. As early as February 2, 1924,

---

[5] In *State ex rel. City of Dexter v. Gordon*, 251 Mo. 303, 158 S. W. 683, this rule was laid down: "The closing clause of the constitutional limitation under discussion, expressed in the words 'previous to the incurring of such indebtedness,' has reference to the time when the constituted authority of a subdivision is required to ascertain whether the proposed indebtedness exceeds the constitutional limit, and not to the time when such debt, if authorized, will become obligatory."

this township took, through its supervisors, the first step in this matter, as we set forth in paragraph two of this opinion. It is a legitimate assumption that *on this date* as well as on March 1, 1924, when further important action was taken by the Supervisors as herein set forth, the fact that the assessment was $419,530, as made in 1923, was a vital factor in the Supervisors' deliberations. In all their official actions and in the advertisements for the information of the electors they and the electors treated this *1923* assessment as "the last preceding assessed valuation" of the taxable property in the township. We decide that they were justified in doing so and since this increased debt of $29,000 did not make the debt of the township exceed seven per centum of the 1923 assessed value of the taxable property in Young Township, it cannot be adjudged invalid as contravening Art. 9, sec. 8 of the Constitution of Pennsylvania.

The other questions relate to the failure of the Township (a) to provide for an annual tax sufficient to pay the interest and principal within thirty years as required by article IX, section 10 of the Constitution, and (b) to file a financial statement as required by the Act of April 20, 1874, P. L. 65, 53 PS Sec. 1872, and its supplement. These issues are decided by the case of *Cameron Bank v. Aleppo Township,* 338 Pa. 300, 13 A. 2d 40, where the Township defended the payment of its note upon the two grounds just stated. We there said: "There can be no question that in Pennsylvania, where a municipality issues an express contract or formal obligation which is void because of the failure of its authorities to comply with the constitutional and statutory requirements here involved, an action for money had and received by the lender of the money will lie. There is an implied obligation resting upon the municipality to pay back what was lent to it in good faith: [6] *Ohlinger v.*

---

[6] Gilbert McGregor lent his $29,000 to Young Township in good faith. The appellee concedes and the court below found that "the

*Maidencreek Township,* 312 Pa. 289, 167 A. 882, 90 ALR 1227. . . . The Township is endeavoring to escape payment of an honest debt. There is an abundance of authority to prevent it from doing so": (citing cases).

In *Ohlinger v. Maindencreek Township,* supra, we said "The debt of the township, however, was a lawful one and the money borrowed was applied to a proper purpose: *Boro of Rainsburg v. Fyan,* 127 Pa. 74, 17 A. 678. The purpose of the indebtedness having been legal, the constitutional provision limiting the amount of indebtedness not having been violated, although the Township failed to follow the prescribed regulation to make the evidence of indebtedness valid, the one furnishing the money to the municipality is not to lose by this neglect, nor is the township to profit. The party so lending the money is entitled to recover in assumpsit, formerly on a common count for money had and received . . ." See also *Long v. Lemoyne,* 222 Pa. 311, 71 A. 211; 21 LRA (NS) 474; *Boro of Rainsburg v. Fyan,* 127 Pa. 74, 17 A. 678, 4 LRA 336.

In the instant case the action is on the note and not on a common count for money had and received. In *Luzerne Township v. Fayette County,* 330 Pa. 247, 25, 199 A. 324, we said: ". . . , even where a right of recovery in quasi contract exists, it cannot be established in a suit on the express contract: *Neubling v. Topton Borough,* 323 Pa. 154, 156."

Before this case was argued in this court, the appellant filed a petition asking leave to amend her statement of claim by adding a count for money had and received and asks us "to dispose of the entire controversy once and for all, since plaintiff verily believes that no new evidence or factual defense would be raised." The Appellee traverses this and says that "a decision on a cause of action for money had and received might, and doubt-

---

purpose for which this debt of $29,000 was incurred was lawful". The money was used to pay the Township's obligation to Jefferson county for the construction of a desired and useful highway.

less would, necessitate the taking of additional testimony" and that "the rights of the Appellee would be prejudiced in that evidence available to it which was not admissible at the trial . . . , involving a suit on a note, might be admissible in an action for money had and received."

In an otherwise proper case, where all the evidence concerning the transaction has been fully developed, we have a right to permit the amendment of the pleadings so that one suing upon an express contract may recover upon a quantum meruit, providing that it adheres to the same transaction in both cases and does not change the factual situation as presented to the court below: *Taylor v. Stanley Amusement Co. of America,* 305 Pa. 546, 553, 158 A. 157; and we have the right to consider the amendment as having been made and so dispose of the issue.[7] But where, as here, the necessity of taking additional testimony is alleged, we will not permit the amendment of the pleading, but we will remand the case to the court below, with a procedendo. As we said in *Taylor v. Stanley Co.,* supra, the court below "is not to be convicted of error because of an amendment to the record after it reached this court: *Carbondale v. Hourigan,* 267 Pa. 154. Plaintiff may after the record has been remitted, apply for leave to make the proposed amendment. We have no doubt such application would be granted . . ." The cause can then be justly determined.

The judgment is reversed and the record is remitted to the court below, with a procedendo.

Mr. Justice DREW dissents.

---

[7] 49 C. J. 523, sec. 693, makes this statement: "An amendment adhering to the original transaction but seeking to recover upon an implied contract or quantum meruit, instead of upon an express contract, or seeking to recover upon an express contract instead of an implied contract or quantum meruit, is commonly permitted, and such an amendment is not regarded as introductive of a new cause of action, or if introductive of such a cause of action as nevertheless not prejudicial to defendant."