Cohen, Appellant, *v.* Marian.

Argued March 18, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

432

*Marshall H. Morgan,* for appellant.

*Donald W. Hedges,* with him *William H. Grimditch, Jr.,* and *Mancill, Cooney, Ott & Semans,* for appellees.

OPINION BY DITHRICH, J., July 17, 1952:

Appellant brought this action in assumpsit to recover the sum of $776.80, with interest, representing the aggregate of service charges alleged to have been unlawfully levied against his "Special Checking Account" with appellees' bank. During the period January 1, 1943, to June 18, 1945, the date the account was closed, deductions totaling $981.45 were made for banking services. Appellant's complaint is that under the terms of the written contract governing the account, as set forth on the signature card signed by appellant at the time the account was opened, the appellees were entitled to deduct only $204.65 as service charges.

The case was tried nonjury before BURCH, J., who found for appellees. The court en banc dismissed appellant's motions for new trial and judgment n.o.v. and entered judgment on the finding of the trial judge. This appeal followed.

The controversy is the result of the unusual manner in which appellant manipulated his bank account and the exceptional service afforded him by appellees' bank. During the period in question appellant's average monthly balance was $42, but checks totaling $362,000, averaging about $12,000 monthly, were issued against and paid from the account. It appears that in

the ordinary course of business the Federal Reserve would deliver to appellees' bank at 10:30 a. m. all checks drawn on the bank by its depositors. At 1:00 p. m. a messenger of the Federal Reserve would pick up all dishonored checks. However, the bank had until 4:00 p. m. to return them by its own messenger. In the period involved the bank received 1751 checks in substantial amounts drawn by appellant against insufficient funds. At appellant's request these checks were not dishonored immediately but, instead, appellant was given opportunity to make deposits covering them before 4:00 p. m. Such deposits were made on all except 22 occasions when it was necessary for the bank to return the checks to Federal Reserve by its own messenger. The bank sent monthly statements to appellant showing charges for both normal and unusual activity in his account. On 85 occasions the account was overdrawn because it contained insufficient funds to pay the service charges.

Appellant admits that the bank properly deducted $204.65 as charges for the normal banking activity contemplated by Paragraphs 2 and 4 of the signature card. The dispute is whether the additional $776.80 deducted as charges for the special handling of appellant's overdrafts was justified.

Appellees alleged in their answer to plaintiff's second amended complaint that all the service charges "were proper charges under the terms of the written agreement between the parties." Under new matter they alleged that the service charges made were "In strict compliance with the terms and conditions of the written contract." At trial appellees amended the answer by adding thereto an averment that on or about January 1, 1943, there was posted in the banking room of the bank a notice that thereafter all accounts showing "special activity" would be subject to special analy-

sis and charges, and that special charges were made pursuant thereto. Judge BURCH, however, in his memorandum opinion, by way of explanation of his finding, said: "In reaching this conclusion the trial judge gave no effect and no weight to the evidence offered pursuant to the amendment, with reference to the alleged change in the contract by notice posted. In the view we take of this matter such evidence and the amendment itself are irrelevant." It was the lower court's opinion that "The written contract only provided for normal banking activity. . . . But, for the plaintiff's convenience, a course of conduct was entered into not covered by the written contract. For this extra banking service the bank was entitled to payment. The services were charged on the basis of 25 cents for each $100.00 of overdraft which was handled in this way. This does not appear to us to be unreasonable. The total charges for service appear to be reasonable and fair in the light of the plaintiff's operations." Speaking for the court en banc, Judge BURCH crystallized the sole basis for the finding for appellees as follows: "That there was at least an implied agreement to pay for such unusual services, by which the depositor was able to protect his credit and his financial standing, is established by the fact that the depositor received without protest over a period of thirty months, monthly statements setting forth the amount of the charges for such services. The depositor cannot stand by and receive the benefits and then after the account has been closed, make demand upon the bank for alleged overpayments."

It is clear from the memorandum opinion of the trial judge and the opinion of the court en banc that the bank was permitted to retain the moneys deducted in excess of the $204.65 for admitted normal services on an implied contract.

Since the trial judge made no finding that the notice alleged in the amendment to the answer was in fact posted and gave no effect to the evidence relating thereto, we must, for purposes of review, consider the signature card as containing all the terms of the written contract governing the account, without modification by anything done pursuant to Paragraph 9, by which the bank reserved the right to amend the rules and regulations governing accounts by posting notice thereof in the banking rooms for a period of ten days. Our review, therefore, will be confined to a determination of the correctness of the finding in favor of appellees based on the existence of an implied contract.

Appellant invokes the principle that the existence of an express contract embracing all the terms of an agreement between the parties precludes a finding of an implied contract on different terms. But, contrary to the contention of appellant, the amount of compensation for *all* services to be rendered by the bank was not expressly agreed to. In the contract appearing on the signature card particular charges for specific services are enumerated. The language used can in no way be construed as covering the services which are the subject of the dispute. There is no reference to the handling of checks drawn by the depositor against insufficient funds in such a way as to afford him an opportunity to make covering deposits. In fact, that such services were not within the contemplation of the parties clearly appears from Paragraph 4 of the signature card which flatly provides that all overdrafts "will be returned unpaid without notice to the depositor" at a cost to him of 50 cents for each check dishonored. If the bank had returned each unpaid check without notice to the depositor and charged his account with 50 cents for each check so returned, as it could and perhaps should have done, the alleged overcharge would have been approximately $100 more.

Contracts may be implied in fact or implied in law. The distinction between the two types of implied contract is well drawn in the case of *Cameron v. Eynon*, 332 Pa. 529, 532, 3 A. 2d 423, where Mr. Justice STERN, speaking for the Supreme Court, stated: "A quasi contract arises where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but even in spite of any intention he might have to the contrary. A quasi contract, which is a *fictional* contract, is not to be confused with a contract implied in fact, which is an *actual* contract, and which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." Cf. *Thomas v. R. J. Reynolds Tobacco Co.*, 350 Pa. 262, 38 A. 2d 61; *Lach v. Fleth*, 361 Pa. 340, 64 A. 2d 821; *Home Protection B. & L. Assn. Case*, 143 Pa. Superior Ct. 96, 17 A. 2d 755. In the *B. & L. Assn. Case*, supra, HIRT, J., after referring to the *Cameron* case, said (pp. 98, 99) : "An implied contract must be legitimately inferred from the intention of the parties as indicated by the circumstances and 'the ordinary course of dealing and the common understanding of men.' Hertzog v. Hertzog, 29 Pa. 465. 'Generally, there is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary. A promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, *a useful service of a character that is usually charged for,* and the latter expresses no dissent or avails himself of the service. . . .': 12 Am. Jur., Contracts, §5." (Emphasis added.)

Under the unusual circumstances of the case at bar a contract implied in fact existed between the parties requiring appellant to pay for the special banking serv-

ices provided him. Since appellees did not rely on an implied contract but on an express agreement which we must regard as unproved, appellant contends that the disputed charges cannot be allowed by resorting to the law of implied contracts.

However, in the instant case, it must be borne in mind that while appellees did plead an express contract it was not a contract providing for the payment of a fixed compensation for the services in question. The contract relied on was contained in an alleged notice posted pursuant to Paragraph 9 of the signature card and merely provided that all accounts showing "special activity" would be subject to "special analysis and charges." The averments relating to the charges based on "special activity," that is, activity not covered by Paragraphs 2 and 4 of the signature card, necessarily presented issues pertinent to a pleading of quantum meruit. It was averred that the bank had to return 22 of appellant's checks unpaid; that appellant's account was overdrawn on 85 occasions; and that monthly statements and cancelled checks were submitted to appellant, together with debit slips itemizing charges made for "unusual activity which caused Defendants heavy expenses in handling and analyzing." Moreover, it was averred that at no time during the period in which he used appellees' banking facilities did appellant object to withdrawals made to cover service charges.

We have viewed the evidence offered in support of the averments in the pleadings and the reasonable inferences therefrom in the light most favorable to appellees as we are required to do by law. *Hayden v. Coddington,* 169 Pa. Superior Ct. 174, 82 A. 2d 285. The existence of an implied contract to pay for the reasonable value of the services furnished was established. All the elements of the burden of proving a claim on a quantum meruit were proved, viz., (1) the rendering

of extraordinary banking services, (2) acceptance of them by appellant, and (3) their value. (*Lach v. Fleth,* supra, p. 348.)

In a case pleaded, tried and decided on the theory that the claim was based on an express contract, the Supreme Court said: "In an otherwise proper case, where all the evidence concerning the transaction has been fully developed, we have a right to permit the amendment of the pleadings so that one suing upon an express contract may recover upon a quantum meruit, providing that it adheres to the same transaction in both cases and does not change the factual situation as presented to the court below: Taylor v. Stanley Amusement Co. of America, 305 Pa. 546, 553, 158 A. 157; *and we have the right to consider the amendment as having been made and so dispose of the issue*": McGregor Estate v. Young Township, 350 Pa. 93, 110, 38 A. 2d 313. (Emphasis added.) In *Cowell v. Builders, Inc.,* 139 Pa. Superior Ct. 192, 11 A. 2d 504, this Court said (p. 195) that "the courts are liberal in allowing amendments sufficient to cover such a claim [one based on an implied contract where the express contract pleaded is not proved] where the issue has actually been presented to and passed upon by the trial court and the defendant has not been unduly prejudiced thereby."

In the instant case the evidence concerning the transaction having been fully developed and, moreover, the issue of the existence of an implied contract having been passed upon by the court below, we may consider the appellees' pleadings to have been properly amended to show a claim founded on an implied contract without prejudicing appellant in any way. "Even though it be conceded that one may not sue upon an express contract and recover upon a quantum meruit . . ., the courts generally have treated the matter from the standpoint of amendments of the pleadings, and have held

that where all the evidence concerning the transaction has been fully developed, and the defendant has not been misled by the variance, if any, between the pleadings and the evidence, the pleadings may be amended on appeal to conform to the proof, *or the amendment will be regarded as made*": 18 A. L. R. 1208, Annotation. (Emphasis added.)

Judgment affirmed.