LOBAR, INC., Appellee

v.

LYCOMING MASONRY,
INC., Appellant

v.

Murray Associates Architects, P.C.,

Superior Court of Pennsylvania.

Argued Feb. 15, 2005.

Filed June 1, 2005.

Thomas A. Beckley, Harrisburg, for appellant.

George E. Pallas, Harrisburg, for Lobar.

Frank S. Nofer, King of Prussia, for Murray.

Before: HUDOCK, STEVENS and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Lycoming Masonry, Inc. (Defendant) appeals from the order denying part of its motion for summary judgment against Lobar, Inc. (Plaintiff). Plaintiff brought suit against Defendant on two counts; one count for breach of contract and a second count for promissory estoppel. Defendant moved for summary judgment on both counts. The trial court concluded that no contract was formed between the parties, and therefore, it granted Defendant's motion for summary judgment on the count for breach of contract. But the court denied the motion for summary judgment on Plaintiff's claim for promissory estoppel. For the following reasons, we reverse.

¶ 2 The trial court summarized the facts of this case as follows:

Plaintiff is a general contractor which, in the process of bidding on a job, obtained a bid for the masonry work from Defendant, a masonry subcontractor. Plaintiff used Defendant's number in

calculating its own bid and upon being awarded the contract, informed Defendant it was choosing Defendant to perform the masonry work. Plaintiff sent a written sub-contract agreement to Defendant but Defendant refused to sign such. Plaintiff then rebid the masonry work and entered a subcontract agreement with another masonry subcontractor, at a much higher cost. Plaintiff brought the instant action to recover the difference in what it had to pay the other subcontractor over what Defendant bid to do the job, based on both a breach of contract claim and a claim of promissory estoppel.

In its motion for summary judgment, Defendant contends the facts support neither theory. Specifically, Defendant contends no contract was entered because the terms of the subcontract agreement sent to it by Plaintiff differed substantially from the terms of the bid, thus constituting a counter-offer, rather than an acceptance of the bid.... In its motion for summary judgment, Plaintiff contends that indeed a contract was formed and further, that promissory estoppel should be applied to support a judgment in its favor.

. . .

The parties do agree that Defendant's bid was an offer. Plaintiff contends such offer was accepted by its use of Defendant's bid in submitting its own bid to the owner. Defendant contends, however, that since the subcontract agreement sent to it by Plaintiff contained terms substantially different from the terms of the bid, Plaintiff did not accept its offer but instead returned a counter-offer.

. . .

It is also undisputed that Plaintiff's insistence [that] Defendant use a certain type of Concrete Masonry Units, much more expensive than the type Defendant hoped to use, played a large part in Defendant's refusal to follow through on its bid, and the Court finds as a fact that this insistence was actually the only reason.[FN.7] Further, there is no dispute the written specifications for the project upon which Defendant relied required the use of the more expensive type of Concrete Masonry Units, and Defendant was fully aware of this fact.

[FN.7] While Defendant contends in the instant litigation this was only one factor, arguing the differences in the terms of the subcontract agreement led to its refusal to perform, other circumstances belie this contention: Defendant has signed the same subcontract agreement more than once in the past, and, in fact, when Plaintiff rebid the work in this particular matter, Defendant submitted a new bid knowing full well the same subcontract agreement would follow, yet never mentioned any disagreement with any of the terms of such.

Trial Court Opinion (T.C.O.), 7/20/04, at 1–2, 4–5.

¶ 3 After both parties filed motions for summary judgment, the trial court denied Plaintiff's motion in its entirety. The trial court granted Defendant's motion for summary judgment on Plaintiff's breach of contract count and denied it on the promissory estoppel count. Defendant subsequently filed a petition for permission to appeal pursuant to Pa.R.A.P. 1311, which this Court granted. Our order granting review limited the scope of our review to the issue of the denial of Defendant's motion for summary judgment on the promissory estoppel claim. In its brief, Defendant has presented two questions for our review:

A. Because the issue of whether Lycoming Masonry is liable to Lobar can

be determined using contractual principles of offer and acceptance, was it error for the lower court to apply the doctrine of promissory estoppel?

B. Alternatively, did the lower court commit error by applying the doctrine of promissory estoppel to the construction bidding process?

Brief for Appellant at 3.[1] It is important to note that the propriety of the court's grant of summary judgment to Defendant on the breach of contract count is not presently before us.[2]

¶ 4 Our scope and standard of review of a court's ruling on a motion for summary judgment is as follows:

> Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary.... Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law.

*Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1258 (Pa.Super.2003).

¶ 5 Defendant claims that the trial court committed an error of law because it did not follow our Supreme Court's ruling in *Hedden v. Lupinsky*, 405 Pa. 609, 176 A.2d 406 (1962), where the court rejected a general contractor's claim for promissory estoppel against a subcontractor. Defendant argues that *Hedden* is controlling precedent. We agree.

¶ 6 In *Hedden*, the plaintiffs were general contractors and the defendant was a subcontractor. The defendant submitted a bid by telephone to the plaintiffs for ceramic tile work that was to be done as part of the construction of a proposed addition to a hospital. The plaintiffs used the defendant's bid in calculating its own bid for the entire project, and the general contract was awarded to the plaintiffs.

¶ 7 The plaintiffs then sent a sub-contract to the defendant, which the defendant refused to sign. The sub-contract contained several clauses that either did not exist in the "General Conditions and General Requirements," which was within the specifications for the tile work, or conflicted with provisions within the General Conditions and General Requirements. *See id.* at 407. The court described these inconsistent particulars as follows:

> (1) although the specifications do not require the sub-contractor to provide a maintenance bond, the sub-contract requires such a bond; (2) under the General Requirements, plaintiffs were permitted to retain 5 per-cent on all monthly estimates; the sub-contract stipulated a 10 per-cent retainage; (3) although the specifications made no such provision, the sub-contract prohibited the sub-contractor from continuing to employ any person deemed by the owner, architect or contractor to be a nuisance or a detriment to the job; (4) the contract forbade the defendant to sublet any part of his job without the contractor's permission, notwithstanding the fact there was no such restriction in the specifications; (5) the General Conditions provided that all claims arising out of the contract were to be settled in accordance with the procedures of the American Institute of Architects,

---

**1.** Because we answer the first question in the affirmative, we do not reach the second question.

**2.** However, Plaintiff may present this issue in a direct appeal as of right, should it chose to file one in the future.

whereas the sub-contract stated that the arbitration was to be governed by the Rules of the American Arbitration Association; (6) the defendant was required under the sub-contract to protect plaintiffs against all suits on patent infringements on the work, notwithstanding absence of such a requirement in the specifications; and (7) although there is no such provision in the specifications, the sub-contract authorized the architect to discharge any workman committing a nuisance upon certain parts of the premises.

*Id.* When the defendant refused to perform the tile work, the plaintiffs used the next lowest bidder, which was $6,517.00 more than the defendant's bid. The plaintiffs then brought suit against the defendant for this difference.

¶ 8 The trial court granted the defendant's motion for a compulsory non-suit, and the plaintiffs appealed. First, our Supreme Court addressed the issue of whether there was a contract between the parties. It prefaced its analysis by stating, "It would have been most helpful in deciding this appeal had the record indicated the trade custom in the building industry in Luzerne County regarding the effect given by contractors to oral bids received from sub-contractors and what actions are regarded as necessary to establish a contractual relationship." *Id.* at 407–08. However, since the record was lacking this information, the court concluded that the existence of a contract was solely dependent on "whether the provisions of the sub-contract which plaintiffs sent to defendant in response to his bid, so deviated from the General Conditions and Requirements contained in the specifications as to constitute a counter-offer rather than an acceptance of defendant's bid." *Id.* at 408. The court concluded that the terms of the

plaintiffs' purported acceptance so deviated from the terms of the defendant's offer as to constitute a counter-offer, which the defendant did not accept. *See id.* Accordingly, there was no contract. *See id.*

¶ 9 Our Supreme Court next addressed the defendant's argument that the doctrine of promissory estoppel applied to the facts of their case. *See id.* The court summarily concluded that the doctrine was inapplicable to this factual scenario because "the question of defendant's liability can be decided properly and finally on contractual principles of offer and acceptance." *Id.* We conclude that the facts of the case before us are not distinguishable from those in *Hedden,* and therefore, we are bound by this precedent.

¶ 10 The trial court in the instant case decided not to employ the analysis of our Supreme Court because the trial court "believe[d] [that] application of the doctrine of promissory estoppel best serves the interest of justice while avoiding any legal gymnastics required to apply the traditional contract principles of offer and acceptance." T.C.O. at 2. But the court went on to reason that *Hedden* is distinguishable because in that case, the plaintiffs' purported acceptance "differed materially from the actual specifications upon which the subcontractor relied in formulating its bid." T.C.O. at 4 (footnote omitted). However, the only basis for the trial court in this case to hold that there was no contract between Plaintiff and Defendant would be for it to determine that Plaintiff's purported acceptance actually constituted a counter-offer. Thus, as in *Hedden,* the issue of whether a contract exists between Plaintiff and Defendant hinges upon whether the contract that Plaintiff sent Defendant materially altered the terms of Defendant's offer so as to constitute a

counter-offer, which Defendant rejected.[3] Therefore, we are unpersuaded by the trial court's attempt to distinguish *Hedden.*

¶ 11 Furthermore, had the trial court followed *Hedden,* then ostensibly it would have recognized the import of certain evidence in this case that is pertinent in determining whether Plaintiff accepted Defendant's offer or whether Plaintiff made a counter-offer. As mentioned above, the Supreme Court stated that it would have been most helpful had the record indicated the trade custom regarding what is necessary to establish a contractual relationship between a general contractor and subcontractor. *See Hedden,* 176 A.2d at 408. In contrast, the record before us is replete with the type of evidence that was lacking in *Hedden.* And it is even a more particular type of evidence in that it shows the actual course of dealing between these parties in regards to contract formation.

¶ 12 In point of fact, the trial court recognized that "Defendant and Plaintiff have entered into similar (as far as the details of performance) subcontract agreements in the past, with the expectation at the time of bidding that such written agreements would follow the bidding process." T.C.O. at 2.

> A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. Implied contracts ... arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.

*Ingrassia Const. Co. Inc. v. Walsh,* 337 Pa.Super. 58, 486 A.2d 478, 483 (Pa.Super.1994) (emphasis added). In its brief to this court, Plaintiff recites several pages of deposition testimony from Rodney Phillips, Defendant's President, showing that Defendant in fact has signed almost identical contracts with Plaintiff in the past, and that the only reason Defendant did not sign this contract was not because it contained additional objectionable terms, but rather because Defendant mistakenly submitted a bid based on its intended use of concrete masonry units that were much less expensive than those required by the specifications. And as stated above, the court found this as a fact. We have reviewed the record, and indeed it supports such a finding.

¶ 13 Thus, while the issue is not currently before us, the record seems to reflect that the parties' course of dealing established a contract in this case. In any event, what is important for purposes of this appeal is that Defendant's liability to Plaintiff can be established by contract law. Either there was a contract or there was not a contract. The resolution of this issue depended on whether Plaintiff accepted Defendant's offer or whether it made a counter-offer. Faced with our Supreme Court's rejection of the doctrine of promissory estoppel in a factually indistinguishable case, we are loath to recognize

---

**3.** "In order to form a contract, there must be an offer, acceptance, and consideration or mutual meeting of the minds." *Yarnall v. Almy,* 703 A.2d 535, 538 (Pa.Super.1997).

"The question of whether a communication by an offeree is a conditional acceptance or counter-offer is not always easy to answer. It must be determined by the same common-sense process of interpretation that must be applied in so many other cases." 1 A. Corbin, *Corbin on Contracts* § 82 (1963). An alleged acceptance is not unconditional, and is thus not an acceptance, if it alters "the terms of the offer in any material respect...."

*Thomas A. Armbuster, Inc. v. Barron,* 341 Pa.Super. 409, 491 A.2d 882, 887 (1995).

just such a cause of action for Plaintiff in this case.

¶ 14 Order REVERSED IN PART.