**TYCO ELECTRONICS CORPORATION,**
Appellee,

v.

Thomas F. DAVIS & Cynthia Cooper, Appellants.

Superior Court of Pennsylvania.

Argued Nov. 30, 2005.

Filed March 27, 2006.

Frank P. Clark, Camp Hill, for appellants.

Andrew L. Levy, Harrisburg, for appellee.

BEFORE: JOYCE, ORIE MELVIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Thomas F. Davis and his wife, Cynthia Cooper, appeal from the January 5, 2005 Order granting the motion for summary judgment filed by appellee Tyco Electronics Corporation, appellant husband's former employer. The underlying lawsuit is a breach of contract and unjust enrichment action filed by Tyco against appellants to recover money owed to appellee pursuant to a tax equalization policy (TEP) provided for expatriate employees. We affirm.

The facts which gave rise to this cause of action are as follows. Davis is a United States citizen who in the fall of 1996 accepted a foreign assignment from Tyco to begin working in Germany. Prior to commencing this assignment, Davis met with Tyco representatives who presented him with and explained Tyco's "Expatriate Policies and Procedures Manual." This document described Tyco's tax equalization policy (TEP). The TEP was meant to make a foreign assignment tax neutral, meaning that Tyco would adjust the employee's compensation such that the tax structure of a foreign country would not affect the employee's compensation advantageously or disadvantageously.

Pursuant to TEP, Tyco would pay the employee's foreign taxes and provide for the preparation of the employee's tax returns, while the employee could claim the foreign tax credits on his United States tax return. However, the TEP provided that the employee could not retain the benefit of the foreign tax credits such that the employee's tax liability would be less than what it would have been if the employee had remained in the United States. As such, if the employee's hypothetical tax liability (a calculation of what the employee would have paid in taxes had he remained in the United States) was greater than the employee's actual tax liability, the employee was expected to pay the difference to Tyco. Conversely, if the employee's hypothetical tax liability was less than the employee's actual tax liability, then Tyco would pay the difference to the employee.

In 1999, Davis retired from Tyco. Davis received a tax equalization calculation for each year from 1996 through 1999. Tyco brought suit to recover balances totaling $25,538 which they [sic] claimed to be due them [sic] pursuant to the final calculation of the tax equalization for the years 1998 and 1999.[1]

1 The defendants do not dispute the amount that Tyco claims to be owed them [sic] pursuant to the final calculation of the tax equalization for the years 1998 and 1999; only that an enforceable agreement to pay those amounts existed between the parties.

Trial Court Opinion, Kleinfelter, J., 1/5/05 at 1–2. Reasoning that an implied agreement existed between the parties, the court granted Tyco's motion for summary judgment. "Tyco asserts that all parties took actions that clearly manifested their respective intent to be contractually bound by the TEP." Id. at 4. As a consequence of the Order granting summary judgment, it was concluded appellants owed appellee tax equalization payments for the tax

years 1998 ($2,337) and 1999 ($23,246).[1] We address appellants' arguments bearing in mind the appropriate standard of review for an appeal from an Order granting summary judgment.

Our standard of review on an appeal from the grant of summary judgment is settled: a reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule, Pa.R.C.P. 1035.2 [**Motion**]. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. We will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Feldman v. Pa. Medical Professional Liability Catastrophe Loss Fund,* 868 A.2d 1206, 1208 (Pa.Super.2005), *appeal denied,* 584 Pa. 701, 882 A.2d 1006 (2005) (quotations and citations omitted).

■ ¶ 2 Appellants responded in timely fashion to the court's Order directing them to file a 1925(b) statement, and on appeal, they first argue that the court erred by finding there existed an implied contract between them and Tyco.[2] Appellants argue there is neither a bargained-for exchange between the parties, nor any indication of a mutual intent to be bound beyond the existence of the employment relationship. Pennsylvania law disfavors extrapolating an implied contract from an employment policy that clearly contained strong disclaimer language or from an at-will employment relationship that ended with appellant's July 17, 1999 signing of a voluntary release from his employment with Tyco.

■ ¶ 3 An implied contract may be found to exist where the surrounding circumstances support a demonstrated intent to contract. *Lobar, Inc. v. Lycoming Masonry, Inc.,* 876 A.2d 997 (Pa.Super.2005).

A contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. Implied contracts ... arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.

*Id.* at 1001. A contract implied in fact, "is an *actual* contract, and ... arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." *Cohen v. Marian,* 171 Pa.Super. 431, 90 A.2d 373, 376 (1952) (emphasis in original); *see also Halstead v. Motorcycle Safety Foundation, Inc.,* 71 F.Supp.2d 455 (E.D.Pa.1999).

■ ¶ 4 We have reviewed the record and agree with the trial court that the appellants were obliged, as evidenced by their conduct and admissions, to pay the amounts owed pursuant to the TEP agreement for the tax years 1998 and 1999. The TEP agreement describes the following responsibilities for the respective parties:

---

1. We note for the record that in his deposition testimony, appellant husband concedes he has an obligation to pay the 1998 tax equalization amount. N.T., 12/29/03, at 68.

2. Tyco is the successor in interest to AMP, Inc.

Employee Contribution, Hypothetical Tax:

While on assignment, the expatriate is expected to pay the same amount in taxes that would have been paid in the home country.

This contribution is called a Hypothetical Tax.

[Tyco] retains a tax consultant to help the expatriate prepare both home and host country tax returns. The consultant maintains a professional relationship with the expatriate regarding the details of the tax return. [Tyco] is provided only with the net result of the calculations to ensure proper use of equalization guidelines.

Company Contribution:

[Tyco] will pay the additional tax costs associated with the assignment, subject to the limitations described in the Tax Equalization Policies.

Expatriate Process and Policies, Defense Exhibit 3, at 22. In the Expatriate Policies and Procedures Manual provided to appellant in anticipation of his move to Germany, the TEP is described in even greater detail. Expatriate Policies and Procedures, Defense Exhibit 20, at 52–74. Tyco states, "[e]xpatriates are covered under these policies starting with the tax year the assignment begins and ending with the calendar or fiscal tax year after the assignment is completed. Certain provisions will be extended at [Tyco's] discretion where assignment-related income is received in later years or where company-paid host-country tax credits can be used to offset an employee's subsequent tax-year liability." *Id.* at 51.

¶ 5 As the trial court explained, from the beginning of appellant's overseas assignment with Tyco in 1996, up and through his retirement in 1999,

Tyco withheld the hypothetical tax from [appellant's] paychecks, paid all of [his] foreign taxes and arranged for a tax service to prepare the [appellants'] tax returns. For their part, the [appellants] provided financial documentation to the tax service for the preparation of their joint tax returns and authorized the tax service to disclose information to Tyco as necessary to prepare and process the tax equalization settlement. Moreover, the [appellants] settled the 1996 tax equalization calculation in accordance with the TEP. Additionally, [appellant], in his deposition testimony, acknowledged that he was required to settle any balances due pursuant to the TEP. (Plaintiff's Exhibit A, pg. 45). [Appellant] further admitted that he has an obligation to settle his 1998 tax equalization policy and that he was subject to the terms of the Expatriate Policies and Procedures Manual in 1999. (Plaintiff's Exhibit A, pg[s]. 68, 94).

Trial Court Opinion, at 4. Also included in the Expatriate Policies and Procedures Manual is a paragraph addressing the nature of taxes paid by Tyco on appellant's behalf. "[Tyco's] general policy is to treat all host- and home-country tax payments as cash advances (loans). Accordingly, the expatriate will be required to execute a loan agreement to document an unconditional obligation to repay the loan through the Tax Equalization Settlement process.... These advances will be converted to income and settled when the Tax Equalization Settlement Calculation is prepared." *Id.* at 62.

¶ 6 We remain unswayed by appellants' arguments that they made no promise to pay Tyco the taxes owed. Their actions belie this averment; the parties' actions demonstrate a clear intent to be bound by a contract consistent with the definite terms of the Tax Equalization policy. Likewise, the July 17, 1999 release signed by appellant husband upon his retirement

did not relieve him of the obligation to satisfy his tax obligations for compensation received relative to the years 1998 and 1999. Appellants' continued reliance on the TEP to satisfy their foreign tax obligation even after appellant husband retired is evidenced by their 1999 federal tax return, prepared by appellee's tax consultants, with the authorization of appellants, and filed in 2000. Appellant admits he is responsible for the $2,337 owed to Tyco for money earned in 1998 and as a consequence of the tax equalization calculation. We are likewise convinced, based on the parties' actions, that appellants are responsible for the 1999 tax liability. Appellant husband's status as an at-will employee is irrelevant to any obligation incurred as a result of the TEP agreement. *See Sullivan v. Chartwell Investment Partners, LP,* 873 A.2d 710, 716 (Pa.Super.2005) (noting that while a policy generally will not alter at-will employment status, when parties act in accord with said policy, a breach of contract action may arise).

¶ 7 As to appellants' assertion that appellee breached the parties' agreement by not promoting appellant husband upon his return from Germany, we find no evidence to support such argument and note further that appellant husband testified only that it was his understanding that to be considered for promotion in "the executive ranks," he needed to be part of the executive development program, which necessarily required an overseas assignment at some point. The record indicates when appellants were repatriated, appellee offered appellant husband an early retirement package which he accepted, obviously eliminating any possible "promotion" to be offered as a result of the overseas assignment. There was no breach by appellee.

¶ 8 Appellants' final argument is court error as a matter of law by enforcing the TEP policy as a contract notwithstanding the July 17, 1999 release signed by appellant husband. Such release, appellants argue, supersedes any prior agreement between appellants and the employer, and makes no mention of any obligation under TEP. Appellants' brief at 19–20. As such, appellants contend the release acts to absolve them of any obligation under the expatriate policy.

¶ 9 As the trial court notes, however, following execution of this document, the parties continued to act pursuant to the terms of the TEP, appellants providing documents needed to process their tax obligations in Germany and in the United States, and the appellee providing the tax services needed and payment of money owed. Trial Court Opinion at 5. "As such, the parties continued to demonstrate their respective intents to be contractually bound by the TEP." *Id.* We agree that the release did not absolve appellants of their obligation under the TEP and expatriate policies.

¶ 10 We have reviewed the record in its entirety, and considered it in a light most favorable to the appellants as the non-moving party, and nevertheless find the record supports the award of summary judgment in favor of appellee.

¶ 11 Order affirmed.